1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10    ESTATE OF WILLIAM HENNEFER,
      JAH, JUH, WH, NH, and BIANCA
11    HENNEFER,                                    No. 2:22-cv-00389-TLN-KJN

12        Plaintiffs,

13             v.                                   **ORDER**

14    YUBA COUNTY, CALIFORNIA, et al,

15             Defendants.

16

17

18          This matter is before the Court on Defendant Sheriff Wendell Anderson's ("Defendant")

19    motion to dismiss (ECF No. 12).  Plaintiffs Estate of William Hennefer, JAH, JUH, WH, NH, and

20    Bianca Hennefer (together "Plaintiffs") filed an opposition.  (ECF No. 16.)  Defendant filed a

21    reply.  (ECF No. 18.)  For the reasons set forth below, Defendant's motion is GRANTED.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

                                            1

## I.       Factual Background

On January 25, 2021, Deputy Tyler Eck ("Deputy Eck") of the Yuba County Sheriff's Department ("YCSD") responded to a call from concerned property owners outside of Marysville, California.  (ECF No. 1 at ¶¶ 25–26.)  There, he found William Hennefer ("Mr. Hennefer" or "Decedent") who appeared delusional.  (*Id.* at ¶ 25.)  At approximately 1:36 p.m., Deputy Eck spoke on the phone to Mr. Hennefer's wife, Bianca Hennefer, who informed him that Mr. Hennefer was confused and had a history of mental health issues.  (*Id.* at ¶¶ 25–26.)  Bianca Hennefer said she or another family member would come to pick up Mr. Hennefer within 30 minutes.  (*Id.* at ¶ 26.)  Deputy Eck said this would be fine.  (*Id.*)

Shortly thereafter, Mr. Hennefer went inside his vehicle and asked Deputy Eck if he could leave.  (*Id.* at ¶ 27.)  Deputy Eck responded that he was being detained for suspicion of being under the influence of a controlled substance.  (*Id.*)  Mr. Hennefer began to slowly drive his truck forward towards Deputy Eck's vehicle.  (*Id.* at ¶ 28.)  Deputy Eck then drew his handgun, pointed it at Mr. Hennefer, and told him to stop the truck.  (*Id.*)  Mr. Hennefer complied.  (*Id.*)  Deputy Eck then issued a call for assistance at the scene and reported that Mr. Hennefer said he wanted to die and told Deputy Eck to shoot him.  (*Id.*)

Minutes later, Deputy Valentino Aguirre ("Deputy Aguirre") arrived at the incident scene.  (*Id.* at ¶ 29.)  Mr. Hennefer remained in his truck and began vomiting.  (*Id.*)  Deputies Eck and Aguirre continued holding Mr. Hennefer at gunpoint, while Deputy Aguirre commanded him to get out of the truck.  (*Id.* at ¶ 30.)  Mr. Hennefer got out of the truck and stood behind the open driver's side door.  (*Id.*)  Deputy Aguirre commanded Mr. Hennefer to move to the front of the vehicle, but he did not do so.  (*Id.*)

Sometime between 1:09 and 2:15 p.m., the YCSD K-9 team was deployed near Mr. Hennefer.  (*Id.* at ¶ 32.)  At approximately 2:13 p.m., Deputy Teng Saechao ("Deputy Saechao") arrived on scene and took operational control.  (*Id.* at ¶ 33.)  Deputy Saechao tried to gain Mr. Hennefer's compliance with oral commands but was unsuccessful.  (*Id.*)  Then, at approximately 2:15 p.m., Terra Hennefer arrived at the scene, but YCSD deputies prevented her from speaking with Mr. Hennefer.  (*Id.* at ¶ 34.)

Approximately five minutes later, Detective Natalie Mullins ("Detective Mullins") from YCSD's Crisis Negotiating Team arrived on scene.  (*Id*. at ¶ 36.)  Using a YCSD cruiser PA system, Detective Mullins commanded Mr. Hennefer to leave the truck, but he did not do so.  (*Id*. at ¶ 37.)  Within a few minutes, Mr. Hennefer began to drive slowly backward, then forward.  (*Id*.)  Detective Mullins commanded him to stop.  (*Id*. at ¶ 38.)  Mr. Hennefer then drove slowly into an irrigation ditch, leaving the truck stuck with its front end in the water.  (*Id*.)

At approximately 2:48 p.m., Bianca Hennefer received a call from Mr. Hennefer but could not hear any voice or movement on the phone.  (*Id*. at ¶ 41.)  Around this time, Mr. Hennefer lost consciousness.  (*Id*. at ¶ 55.)  Moments later, Bianca Hennefer arrived at the incident scene, but YCSD deputies prevented her from speaking with or approaching Mr. Hennefer.  (*Id*. at ¶ 41.)  At approximately 2:53 p.m., Shanna Hennefer, Mr. Hennefer's ex-wife, called YCSD dispatch and told Detective Mullins that Mr. Hennefer said he was in medical distress.  (*Id*. at ¶ 42.)  Using the PA system, Detective Mullins offered to provide Mr. Hennefer medical attention, but Mr. Hennefer did not respond.  (*Id*. at ¶ 44.)  Around 2:57 p.m., Detective Mullins and Deputy Saechao learned about Mr. Hennefer's heart condition and schizophrenia, and Detective Mullins stated it was likely that Mr. Hennefer was now unresponsive because he was in serious medical distress.  (*Id*. at ¶¶ 45–46.)

Between approximately 3:07 pm and 4:09 p.m., YCSD monitored Mr. Hennefer using a CHP Air 21 unit and a YCSD-operated drone, which both consistently reported that he was seated in the driver's seat of the truck, not moving.  (*Id*. at ¶ 47, 49.)  At approximately 4:20 p.m., seven YCSD officers approached Mr. Hennefer's truck where they found Mr. Hennefer with no pulse.  (*Id*. at ¶ 52.)  Paramedics were then allowed to attend to Mr. Hennefer and pronounced him dead on the scene.  (*Id*.)

It was later determined that Mr. Hennefer died of heart failure and/or pulmonary edema which unfolded over an extended period.  (*Id*. at ¶ 55.)  He lost consciousness just before 3:00 pm and died sometime in the following 60 to 90 minutes because his lungs gradually filled with fluid due to heart failure.  (*Id*.)  Plaintiffs allege if Mr. Hennefer had received timely medical aid, he would not have died.  (*Id*.)  At all relevant times during this incident, Defendant was the Sheriff

1    of Yuba County.  (*Id*. at ¶ 9.)

2          Interactions between law enforcement officers and persons with mental health problems,

3    like the interaction at issue here, are considered Crisis Intervention Incidents.  (*Id*. at ¶ 57.)

4    Policies, practices, and procedures for Crisis Intervention Incidents ("Crisis Intervention PPPs")

5    function to prevent such incidents from unduly escalating to situations requiring the use of force

6    or other inappropriate responses that may result in injury to a person.  (*Id*. at ¶ 58.)  YCSD has

7    two Crisis Intervention PPPs: Policy 428 and Policy 404.[1]  (*Id*. at ¶ 60.)

8          Medical Assistance PPPs are policies, practices, and procedures regarding the provision of

9    medical assistance to persons that are injured or have a medical emergency while being detained

10   or arrested.  (*Id*. at ¶ 62.)  YCSD does not have any Medical Assistance PPPs.  (*Id.*)

11         Plaintiffs allege YCSD's policies are deficient.  (*Id*. at ¶¶ 61–62.)  Specifically, Plaintiffs

12   allege that Policies 428 and 404 are inadequate because they fail to instruct YCSD personnel to:

13   (a) gather and analyze information and history on the person in crisis from acquaintances, family

14   members, and/or treating medical providers; (b) request professional medical/psychiatric

15   assistance from the County Behavioral Health Department or other comparably trained and

16   licensed persons with knowledge/experience in crisis intervention; (c) allow professional medical

17   personnel and/or family members to communicate with and calm the person in crisis; (d) not

18   threaten the person in crisis with arrest or make other similar threats or demands; (e) not to deploy

19   weapons and K-9 units unless and until necessary; and (f) not to shout commands at the person in

20   crisis but to calmly communicate and not frighten the person in crisis.  (*Id*. at ¶ 61.)  Plaintiffs

21   also allege YCSD improperly lacks any Medical Assistance PPPs.  (*Id.* at ¶ 62.)

22         Plaintiffs allege Defendant was, at all relevant times, responsible for formulating,

23   adopting, enforcing, and overseeing the implementation of all YCSD policies and for ensuring

24   that YCSD deputies were adequately trained.  (*Id*. at ¶ 67.)  Does 1-5 were responsible for

25   training and periodically reported to Defendant on the training status of YCSD officers and

26

27   ―――――――――――――
[1]      Policy 428, titled "Crisis Intervention Incidents," and Policy 404, titled "Crisis Response
28   Unit," are attached to the Complaint as Exhibits 2 and 3, respectively. (ECF No. 1-1 at 7–12, 13–
     24.)

1  deputies.  (*Id*. at ¶ 68.)  Plaintiffs allege Defendant failed to carry out these supervisory

2  responsibilities because YCSD "has not trained its officers and deputies in Policies 404 or 428 as

3  required" or compelled "periodic operational field practice and training as Policies 404 and 428

4  mandate."[2]  (*Id*. at ¶ 64.)

5       Furthermore, Plaintiffs allege prior to the death of Mr. Hennefer, only 3 out of

6  approximately 146 YCSD officers and deputies had ever taken a Peace Officer Standards and

7  Training ("POST")-certified class on mental health, only 5 out of 146 deputies had ever taken a

8  POST-certified class on de-escalation techniques, and only 19 out of 146 deputies had ever taken

9  a class on Crisis Intervention.  (*Id*. at ¶ 65.)  Of the named individual Defendants, only Deputy

10  Saechao (in 2015) and Deputy Roger Tarwater (in 2016) had taken any of these three types of

11  classes prior to the death of Mr. Hennefer.[3]  (*Id.*)

12      **II.**    **Standard of Law**

13       A motion to dismiss for failure to state a claim upon which relief can be granted under

14  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

15  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

16  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

17  Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

18  federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

19  grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

20  citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

21  discovery rules and summary judgment motions to define disputed facts and issues and to dispose

22  of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

23       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

24  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

---

25  [2]    Although Plaintiffs cite to specific sections of Policies 404 and 428, which they attached

26  to the Complaint as exhibits, it is unclear what training is "required" or "mandate[d]" by these
    policies.

27  [3]    Plaintiffs' analysis of publicly available POST training records for YCSD personnel are

28  attached to the Complaint as Exhibit 4.  (ECF No. 1-1 at 25–31.)

1   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail*

2   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

3   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

4   relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

5           Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

6   factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

7   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

8   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

9   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

10  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

11  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

12  statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

13  are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355

14  F.3d 1179, 1183 (9th Cir. 2004) (citation omitted).  Moreover, it is inappropriate to assume the

15  plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

16  in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

17  *Council of Carpenters*, 459 U.S. 519, 526 (1983).

18          Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

19  facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

20  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

21  reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

22  680.  While the plausibility requirement is not akin to a probability requirement, it demands more

23  than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

24  inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

25  experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

26  her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed.

27  *Id.* at 680 (internal quotations omitted).

28  ///

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.   ANALYSIS**

Defendant moves to dismiss the six causes of action brought against him: claims two, eight, fifteen, sixteen, seventeen, and eighteen. The Court addresses each in turn.

A.   <u>Federal Claims under 42 U.S.C. § 1983: Claims Two and Eight</u>

Plaintiffs assert two claims against Defendant under 42 U.S.C. § 1983: (1) violation of Decedent's right to life under the Fourth and Fourteenth Amendments; and (2) violation of the Plaintiffs' rights to familial association under the Fourteenth Amendment. For both claims, Plaintiffs allege that Defendant's failures to implement adequate policy, as well as train and supervise subordinates, caused the YCSD officers and deputies to be "unprepared" when responding to the incident with Decedent. (ECF No. 1 at ¶¶ 88–91, 148–151.) Plaintiff alleges these failures were a direct and proximate cause of Decedent's death and thus violated his and Plaintiffs' constitutional rights. (*Id*. at ¶¶ 92, 152.)

7

1        *i.        Claim Two: Supervisory Liability for Loss of Right to Life*

2        Defendant appears to argue Plaintiffs have: (1) failed to allege he was personally involved

3   in the incident, and (2) failed to establish a sufficient causal connection between any wrongful

4   conduct by Defendant and the alleged constitutional violation.  (ECF No. 12-2 at 8–9.)

5   Additionally, Defendant argues this claim is duplicative of Plaintiffs' municipal liability claim

6   against Defendant Yuba County.  (ECF No. 12 at 9; ECF No. 18 at 2.)  In opposition, Plaintiffs

7   restate the allegations in the Complaint regarding Defendant's duties as Sherriff and his failure to

8   carry out those duties, emphasizing "an almost complete absence of any training" for named

9   defendants according to POST records.  (ECF No. 16 at 6–8.)  Plaintiffs also repeat that these

10  "failures left YCSD deputies unprepared to respond to [Decedent's mental health crisis]," which

11  was a proximate cause of his death.  (*Id*. at 7.)

12       "[T]o establish personal liability in a § 1983 action, it is enough to show that the official,

13  acting under color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*,

14  473 U.S. 159, 166 (1985) (emphasis omitted).  A supervisor may be held liable under § 1983 "'if

15  there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

16  sufficient causal connection between the supervisor's wrongful conduct and the constitutional

17  violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885

18  F.2d 642, 646 (9th Cir. 1989)).

19       A supervisor may be held personally liable "for his own culpable action or inaction in the

20  training, supervision, or control of his subordinates . . .."  *Larez v. City of Los Angeles*, 946 F.2d

21  630, 646 (9th Cir. 1991) (internal quotation marks omitted).  To prevail on such a claim, "the

22  plaintiff must show that the official was 'deliberately indifferent to the need to train subordinates,

23  and the lack of training actually caused the constitutional harm or deprivation of rights.'"  *Hyde v.*

24  *City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Flores v. Cnty. of L.A.*, 758 F.3d 1154,

25  1159 (9th Cir. 2014).  To show deliberate indifference, "the plaintiff must allege facts to show

26  that the official disregarded the known or obvious consequence . . . that a particular omission in

27  their training program would cause municipal employees to violate citizens' constitutional

28  rights."  *Id.* (internal quotation marks and brackets omitted).

Both parties agree Plaintiffs have not alleged that Defendant was personally involved in the incident with Decedent.  (ECF No. 12-2 at 8; ECF No. 16 at 8–9.)  Therefore, Plaintiffs claim can survive only if there is "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*, 652 F.3d at 1207.

As an initial matter, Defendant's arguments are difficult to decipher and at times confuse and conflate various legal issues.  For instance, Defendant's argument that Plaintiffs have not alleged a sufficient causal connection is threadbare.  Rather than addressing issues of causation, a centerpiece of Defendant's purported argument, Defendant instead argues that Plaintiffs' allegations of Defendant's supervisory duties are "vague and conclusory."  (ECF No. 12-2 at 9.)  In addition, Defendant contends "9th Circuit case law requires more than naming the Sheriff or Chief of Police as the policymaker to attach liability," citing *Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir. 2007) for support.  (*Id*.)  However, *Blankenhorn* does not provide any support for Defendant's position.

Further, Defendant's argument concerning redundancy of the claim is misplaced.  Plaintiffs have named Defendant in his individual capacity, not his official capacity. (ECF No. 1 at ¶ 9.)  As such, the claim is not duplicative of the municipal claim against Defendant Yuba County. *See Kentucky v. Graham*, 473 U.S. at 165–66 ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent" (internal citations and quotation omitted)).

Despite Defendants' deficiencies, the Court agrees that Plaintiffs have failed to allege a sufficient causal connection between Defendant's alleged wrongful conduct and the alleged constitutional violation.  Plaintiffs have sufficiently alleged Defendant was the supervisor responsible for policymaking, training, and supervision at YCSD.  (ECF No. 1 at ¶¶ 67–68.)  Plaintiffs have also sufficiently alleged Decedent died of "heart failure and/or pulmonary edema which unfolded over an extended period," which would not have happened if he had received timely medical aid.  (*Id*. at ¶ 55.)  However, Plaintiffs do not explain how Defendant's alleged failures to fulfill his supervisory responsibilities caused Decedent's lack of access to timely

1   medical aid or otherwise violated Decedent's constitutional rights.

2          On the issue of causation, Plaintiffs allege merely that Defendant's failures caused

3   responding deputies to be "unprepared," which caused Decedent's death.  (*Id.* at ¶ 91.)  This

4   allegation is vague and fails to connect Defendant's alleged role to the cause of Decedent's death.

5   For example, Plaintiffs allege Defendant formulated and adopted Crisis Intervention PPPs that

6   were deficient in specific ways (*Id.* at ¶¶ 61, 88) and failed to adopt any Medical Assistance PPPs

7   (*Id.* at ¶¶ 62, 88), but they do not allege how these deficiencies caused or directly contributed to

8   Decedent's death.  Plaintiffs also allege YCSD deputies did not receive sufficient training in

9   mental health, crisis intervention, and de-escalation techniques (*Id.* at ¶ 65), but, again, Plaintiffs

10   do not allege how this lack of training caused Decedent's death.  Indeed, Plaintiffs' opposition

11   merely restates the allegations in the Complaint without further explanation or analysis.

12          Plaintiffs reference *Garcia v. Yuba County Sheriff's Department*, 559 F.Supp.3d 1122

13   (E.D. Cal. 2021) in which a court recently found a lack of training in mental health to be a

14   plausible basis of liability under § 1983.  (ECF No. 16 at 2–3.)  However, *Garcia* does not offer

15   any support for Plaintiffs on the issue of causation.  In *Garcia*, the court found causation plausible

16   because "[i]f the City had trained its officers to not escalate the situation, to avoid using physical

17   force, to not rush the situation. . ., to keep a safe distance. . ., and, if necessary, to reach out to

18   mental health professionals, as the plaintiffs allege it should have, then officers would not have

19   immediately placed their weight on [the decedent]'s back and restrained him in a WRAP

20   restraint."  *Garcia*, 559 F.Supp.3d at 1132 (internal citations and quotation marks omitted).  In

21   contrast, Plaintiffs in this case have not alleged *how* the specific alleged deficiencies in policy,

22   training, or supervision, if cured, would have prevented Decedent's death.  Because Plaintiffs

23   have failed to sufficiently allege causation, the Court declines to analyze whether Plaintiffs have

24   sufficiently alleged Defendant's deliberate indifference.

25   ///

26   ///

27   ///

28   ///

Because Plaintiffs fail to allege a causal connection sufficient to sustain supervisory liability, Defendant's motion is GRANTED as to Claim No. 2, with leave to amend.

       *ii.*       *Claim Eight: Supervisory Liability for Loss of Familial Association*

Defendant argues this claim should be dismissed because Plaintiffs' allegations are conclusory and any failure to intervene claims should be dismissed because Defendant was not present at the scene or aware of the incident.  (ECF No. 12-2 at 10–11.)  Plaintiffs respond that they are pursuing a theory of supervisory liability based on sufficient causal connection — and thus Defendant's absence from the scene is non-dispositive.  (ECF No. 16 at 8–9.)

Spouses and children possess a constitutional interest in familial companionship with their spouse and parents under the Fourteenth Amendment.  *Morales v. City of Delano*, 852 F.Supp.2d 1253, 1273-74 (E.D. Cal. 2012); *see also Est. of Osuna v. Cnty. of Stanislaus*, 392 F.Supp.3d 1162, 1176 (E.D. Cal. 2019).  To state a claim for loss of familial association, a plaintiff must show that official conduct "'shocks the conscience' in depriving family members of a liberty interest in the companionship and society of a family member . . . ."  *Est. of Osuna*, 392 F.Supp.3d at 1176 (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)) (internal quotation marks and brackets omitted).  "In determining whether excessive force shocks the conscience, the court must first ask whether the circumstances are such that actual deliberation by the officer is practical.  Where actual deliberation is practical,[] an officer's 'deliberate indifference' may suffice to shock the conscience."  *Wilkinson*, 610 F.3d at 554 (internal citation, brackets, and quotation marks omitted).  Moreover, "[r]ecovery for a violation of the right to familial association is generally contingent on the existence of an underlying constitutional violation."  *Schwarz v. Lassen Cnty. ex rel. Lassen Cnty. Jail*, 628 F.Appx. 527, 528 (9th Cir. 2016).

Plaintiffs' claim for loss of familial association in the instant case is contingent on an underlying constitutional violation.  *See id.*  Because Plaintiffs have failed to state a claim against Defendant for loss of Decedent's right to life, as discussed above, their claim here also fails.  Accordingly, because Plaintiffs have failed to state any underlying constitutional claim, Defendant's motion to dismiss is GRANTED as to Claim No. 8, with leave to amend.

//

B.      California State Law Claims: Claims Fifteen, Sixteen, Seventeen, and Eighteen

Plaintiffs assert four claims against Defendant under California state law: (1) unreasonable and excessive force in violation of Article 1, § 13 of the California Constitution; (2) violation of California Civil Code § 52.1 ("Bane Act"); (3) common law negligence; and (4) wrongful death under California Code of Civil Procedure section 377.60.

i.      Claim Fifteen: Article 1, § 13 of the California Constitution

Defendant argues this claim should be dismissed because he was not present at the scene of the incident and therefore "used no force at all" against Decedent.  (ECF No. 12-2 at 12.) Plaintiffs argue the Complaint alleges Defendant knew of the need to train deputies in mental health crisis response and failed to do so, which caused Decedent's death.  (ECF No. 16 at 10.)

Article 1, § 13 of the California Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated . . .."  Cal. Const. art. 1, § 13.  However, this Court has consistently held that "Article 1, Section 13 of the California Constitution does not confer a private right of action for damages." *Risse v. Porter*, No. 2:19-cv-00624-TLN-AC, 2020 WL 1433144, at *8 (E.D. Cal. Mar. 24, 2020) (internal quotation omitted); *see also Hin v. U.S. Dep't of Just. U.S. Marshals Serv.*, No. 2:21-CV-00393-TLN-JDP, 2022 WL 705617, at *5 (E.D. Cal. Mar. 9, 2022).

Because Article 1, § 13 of the California Constitution does not confer a private right of action, this claim cannot proceed.  Accordingly, Defendant's motion is GRANTED as to Claim No. 15, without leave to amend.

ii.      Claim Sixteen: Bane Act

In the Complaint, Plaintiffs allege Defendant's failure to adopt adequate policy, train, and supervise, as detailed above, "caused and/or enabled threats, intimidation, coercion, and unnecessary and excessive force against [the Decedent]" that interfered with his rights and Plaintiffs' rights secured by the U.S. Constitution and California Constitution.  (ECF No. 1 at ¶ 217.)  Defendant argues this claim should be dismissed because Plaintiffs have not alleged that he

1   personally had any contact or communication with Decedent or Plaintiffs.[4]  (ECF No. 12-2 at 12.)

2   Plaintiffs argue "the direct causation and culpability presented in this case do support liability

3   under the Bane [A]ct."  (ECF No. 16 at 11.)

4       To state a Bane Act claim, "[a] plaintiff must show (1) intentional interference or

5   attempted interference with a state or federal constitutional or legal right, and (2) the interference

6   or attempted interference was by threats, intimidation or coercion."  *Allen v. City of Sacramento*,

7   234 Cal.App.4th 41, 67 (2015), *as modified on denial of reh'g* (Mar. 6, 2015).  However, federal

8   district courts have declined to apply supervisor liability to Bane Act claims.  *See, e.g., Sanchez v.*

9   *City of Fresno*, 914 F.Supp.2d 1079, 1118 n.19 (E.D. Cal. 2012) ("[N]o case has actually applied

10  supervisor liability to a Bane Act claim and this federal Court is loathe [sic] to expand the reach

11  of Bane Act liability"); *San Diego Branch of Nat'l Ass'n for the Advancement of Colored People*

12  *v. Cnty. of San Diego*, No. 16-CV-2575-JLS (BGS), 2018 WL 1382807, at *7 (S.D. Cal. Mar. 19,

13  2018) ("Various courts have held that supervisory liability does not apply to Bane Act claims").

14      Plaintiffs cite no authority supporting the imposition of supervisor liability under the Bane

15  Act and, in fact, concede there is none.  (ECF No. 16 at 11.)  In the instant case, the Court follows

16  the decisions of our sister courts and declines to expand the reach of the Bane Act to include

17  claims of supervisory liability.  *See Sanchez*, 914 F.Supp.2d at 1118 n.19; *San Diego Branch of*

18  *Nat'l Ass'n for the Advancement of Colored People*, 2018 WL 1382807, at *7.  As a result,

19  Defendant's motion is GRANTED as to Claim No. 16, without leave to amend.

20          *iii.*     *Claim Seventeen: Negligence*

21      Plaintiffs allege Defendant owed Decedent a duty of care, breached that duty through

22  failures of policymaking, training, and supervision, and caused responding deputies to be

23  inadequately trained and unprepared to respond to Crisis Intervention Incidents, which led to

24  Decedent's death.  (ECF No. 1 at ¶ 224.)  Defendant argues this claim must be dismissed because

25  the Complaint does not allege "the existence of a special relationship between Plaintiffs and

26  ────────────

27  [4]     Defendant also argues "Sheriff Anderson's role as the Sheriff is protected via absolute
    immunity under Cal. Gov't Code § 8655."  (ECF No. 12-2 at 12.)  However, the issue of absolute
28  immunity is not discussed anywhere in the motion.  For that reason, and because the claim will be
    dismissed on other grounds, the Court declines to address this argument.

1   [Defendant]."  (ECF No. 12-2 at 13.)  Plaintiffs argue there is a special relationship between

2   sheriffs in California and "those members of the public that suffer mental health crisis" which

3   confers "a special obligation on the part of [Defendant] to ensure that deputies they put into the

4   field are prepared."  (ECF No. 16 at 12–13.)

5          To support a negligence claim, "a plaintiff must show that the defendant had a duty to use

6   due care, that he breached that duty, and that the breach was the proximate or legal cause of the

7   resulting injury."  *Hayes v. Cnty. of San Diego*, 57 Cal.4th 622, 629 (Cal. 2013) (internal citation,

8   quotation marks, and brackets omitted).  However, "California law does not recognize a general

9   duty of care on the part of supervisors with respect to negligent hiring, retention, or training."

10  *Est. of Osuna*, 392 F.Supp.3d at 1182.  Rather, the potential legal responsibility of supervisors for

11  negligent training or supervision "'arises from the special relationship they had with the

12  plaintiff.'"  *Id*. (quoting *C.A. v. William S. Hart Union High Sch. Dist*., 53 Cal.4th 861, 877 (Cal.

13  2012)).  "Absent such a special relationship, there can be no individual liability to third parties for

14  negligent hiring, retention or supervision of a fellow employee…."  *William S. Hart*, 53 Cal.4th at

15  877.

16         Courts have declined to find a special relationship between law enforcement supervisors

17  and members of the public.  *See Willis v. Cnty. of Sacramento*, No. 2:13-cv-01671-MCE-EFB,

18  2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) (dismissing a claim against the county sheriff

19  for negligent hiring, supervision, and retention "because Plaintiff did not allege that a duty existed

20  between [the sheriff] and Plaintiff"); *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL

21  2683019, at *7 (E.D. Cal. July 6, 2012) (dismissing a claim against Yuba County Child Protective

22  Services for negligent failure to train and supervise because "there are no allegations suggesting

23  that ... supervisors undertook or otherwise had a special relationship with plaintiff"); *Fuentes v.

24  City of San Diego*, No. 3:16-cv-02871-BEN-JMA, 2017 WL 2670976, at *3 (S.D. Cal. June 20,

25  2017) (dismissing a claim against a police officer's supervisor for negligent failure to "protect

26  people from harm and exercise care in selection, retention, training, and supervision of their

27  employees" because "these alleged duties do not resemble the enhanced duties imposed on school

28  personnel that formed the basis for their special relationship with the minor plaintiff in *William S.*

1    *Hart*").

2           Plaintiffs cite to *William S. Hart* to support their argument that Defendant had a special

3    relationship with Decedent.  In *William S. Hart*, the court found a special relationship between

4    school district employees and pupils "arising from the mandatory character of school attendance

5    and the comprehensive control over students exercised by school personnel" which was

6    "analogous in many ways to the relationship between parents and their children." *William S.*

7    *Hart*, 53 Cal.4th at 869 (internal quotation marks omitted).  Plaintiffs argue a similar special

8    relationship exists between sheriffs and persons experiencing a mental health crisis because such

9    persons "are not mentally competent" and "are entirely dependent upon the responding deputies

10   for their safety." (ECF No. 16 at 13.)  However, this argument reflects a vast extension of the

11   holding in *William S. Hart*.  The court in *William S. Hart* did not root its finding of a special

12   relationship between school district employees and pupils on the pupils' lack of mental

13   competence or vulnerability.  Rather, the court determined the special relationship arose "from

14   the mandatory character of school attendance and the comprehensive control over students

15   exercised by school personnel." *William S. Hart*, 53 Cal.4th at 869.  Accordingly, *William S.*

16   *Hart* is inapposite to the instant case.

17          Plaintiffs go on to cite, *Garcia*, 559 F.Supp.3d 1122 and *Stewart v. County of Yuba*, No.

18   2:19-cv-01744-TLN-DB, 2022 WL 4663344 (E.D. Cal. Sept. 30, 2022) for further support of

19   their position.  (ECF No. 16 at 12.)  However, neither case addresses the "special relationship"

20   issue and are therefore inapplicable to the present case.  Plaintiffs further argue that the existence

21   of Crisis Intervention PPPs "clearly indicate a special duty and a higher standard of care because

22   of the mental incapacity."  (*Id.*)  However, as Defendant points out, Plaintiffs cite no authority for

23   the existence of a special relationship under similar facts.

24          Because Plaintiffs have not alleged a special relationship between Defendant and

25   Decedent, Plaintiffs have failed to state a claim for negligence.[5] Accordingly, Defendant's motion

26   is GRANTED as to Claim No. 17, with leave to amend.

27   _____

28   [5]         This claim also suffers from the same issues of causation discussed in Claim Two.

15

1

     *iv.*  *Claim Eighteen: Wrongful Death*

2

   "A wrongful death claim may be brought by the 'surviving spouse, domestic partner,

3

children, and issue of deceased children' of the decedent." *Raymond v. Martin*, No. 1-18-cv-

4

00307-DAD, 2018 WL 4560686, at *2 (E.D. Cal. Sept. 20, 2018) (quoting Cal. Civ. Proc. Code §

5

377.60(a)).  "The elements of the cause of action for wrongful death are the tort (negligence or

6

other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss

7

suffered by the heirs." *Quiroz v. Seventh Ave. Ctr.,* 140 Cal.App.4th 1256, 1263 (2006) (internal

8

citation, quotation marks, and emphasis omitted).

9

   A viable tort claim is a required element of a wrongful death claim.  *Id.*  As discussed

10

above, Plaintiffs have failed to allege a viable claim for negligence or any other tort.

11

Accordingly, Plaintiffs' wrongful death claim against Defendant also fails.  *See Est. of Osuna*,

12

392 F.Supp.3d at 1184 ("[P]laintiffs have failed to allege a plausible wrongful death claim against

13

[specific defendants] because, as discussed above, they have failed to allege a viable negligence

14

claim against these defendants"); *A.C. v. Griego*, No. 2:16-cv-00746-JAM-CKD, 2016 WL

15

5930592, at *5 (E.D. Cal. Oct. 12, 2016) ("Because the FAC lacks factual allegations showing

16

that [the defendants] owed a duty to [the decedent] or had a special relationship with him, there is

17

no negligence liability, which means there can be no liability for wrongful death").

18

   Because Plaintiffs have failed to state a viable tort claim, Defendant's motion is

19

GRANTED as to Claim No. 18, with leave to amend.

20

///

21

///

22

///

23

///

24

///

25

///

26

///

27

///

28

///

16

**IV.   CONCLUSION**

Defendant's motion to dismiss Claim Nos. 2, 8, 17, and 18 is hereby GRANTED, with leave to amend.  Defendant's motion to dismiss Claim Nos. 15 and 16 is hereby GRANTED, without leave to amend.

Plaintiffs may file an amended complaint not later than thirty (30) days from the electronic filing date of this Order.  Defendant shall file a responsive pleading not later than twenty-one (21) days from the electronic filing date of Plaintiffs' amended complaint.  If Plaintiffs opt not to file an amended complaint, the complaint will proceed as to the remaining defendants.

IT IS SO ORDERED.

Date: June 20, 2023

Troy L. Nunley
United States District Judge